IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Civil Action No. _____ |
| *Ex rel.* Soma G. Priddle | ) | |
| | ) | **FILED *IN CAMERA* AND** |
| Plaintiff, | ) | **UNDER SEAL** |
| | ) | |
| vs. | ) | **FALSE CLAIMS ACT** |
| | ) | **FEDERAL AVIATION** |
| | ) | **REGULATION FRAUD** |
| UNITED AIR LINES, and | ) | |
| UNITED CONTINENTAL HOLDINGS, | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |
| _____ | ) | |

**FILED**

AUG 20 2019 *YS*

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**1:19-cv-05612
Judge Rebecca R. Pallmeyer
Magistrate Judge Jeffrey T. Gilbert**

**PLAINTIFF'S COMPLAINT PURSUANT TO 31 §§ 3729-3732**

**OF THE FEDERAL FALSE CLAIMS ACT**

The United States of America, by and through *qui tam* relator Soma G. Priddle (Relator), brings this action under 31 U.S.C. §3729, *et seq.*, as amended (False Claims Act) to recover all damages, penalties and other remedies established by the False Claims Act on behalf of the United States.

## I.   PRELIMINARY STATEMENT

1.  This is an action to recover damages and civil penalties on behalf of the United States of America, for violations of the False Claims Act arising from false or fraudulent records, statements, or claims, or any contribution thereof, made, used

or caused to be made, used, or presented, or any combination thereof, by the

defendants, their agents, employees, or co-conspirators, or any combination thereof,

with respect to false claims for safe air travel and safe carriage of air cargo, claimed

to be conducted in accordance with Federal Aviation Regulations; ICAO

regulations and Recommended Safe Practices; manufacturers' recommended

Operating Procedures for Flight Operations and Maintenance Operations; industry

standard safety practices;  Safety Management System (SMS) protocols for Part 121

Scheduled Air Carriers, which claims of safety practices were made to the Federal

Aviation Administration (FAA); Department of Transportation (DOT) in

accordance with route approvals; U.S. Government Office for Government Contract

Employee Flights (GSA OFFICE);

2.  Claims for payment to the United States were made, implicitly or explicitly,

alleging safe operating practices, conducted in accordance with the

abovementioned standards by United management, acting on behalf of United Air

Lines and United Continental Holdings, in order to obtain U.S. government funds

in payment of amounts due under the following types of contracts with United

States:

- Contracts to carry U.S. civilian employees of U.S. Government agencies

- Contracts to carry U.S. Dept. of Defense servicemembers and civilian
  employees.

- Contracts to carry U.S. mail

- Contracts to carry freight and cargo for U.S. government agencies

2

- Contracts to provide Civil Reserve Air Fleet (CRAF) aircraft .

3. Upon information and belief, additional claims for payment to the United States, and claims for financial benefits, conferred by the government of the United States were made in the form of requests for route approvals by the U.S. Dept of Transportation.

4. The False Claims Act was enacted during the Civil War.  Congress amended the False Claims Act in 1986 to enhance the Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the False Claims Act, which Congress characterized as the primary tool for combating government fraud, was in need of modernization.  Congress intended that the amendments create incentives for individuals with knowledge of fraud against the government to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

5. The False Claims Act provides that any person who knowingly submits, or causes the submission of a false or fraudulent claim to the U.S. Government for payment or approval is liable for a civil penalty of up to $11,000.00 for each claim, plus three times the amount of damages sustained by the Government.

6. The Act allows any person having information about a false or fraudulent claim against the Government to bring an action for himself and the Government, and to

3

share in the recovery.  The Act requires that the complaint be filed under seal for a minimum of 60 days (without service on the defendant at any time) to allow the Government time to conduct its own investigation and to determine whether to join the suit.

7. Under the Federal Aviation Regulations,  (a) aircraft owners; (b) aircraft operators; (c) Part 121 Scheduled Air Carriers; (d) Part 145 Certified Aircraft Repair Stations; (e) check airmen and FAA Designated Examiners; (f) aircraft Pilot-in-Command, also known as Aircraft Captain (internationally referenced as  Commander in ICAO publications); and (g) airplane mechanics, specifically Aircraft and Powerplant Mechanics with Inspector Authorization (IA)  have specific responsibilities to prevent falsification through errors of omission or commission of aircraft logbooks, airmen logbooks, and flight crew training records.

8. Falsification of aircraft and airmen records, and operation of aircraft in violation of the Federal Aviation Regulations in general, and in violation of the specific requirements of the Operating Specifications for that individual Aircraft Operator, upon which contracts with the United States government explicitly and implicitly depend, comprises a False Claim, as referenced by the False Claims Act, and the abovementioned actors are liable under the False Claims Act for their role in the submission of false claims.

9. This is an action for treble damages and penalties for each false claim and each false statement under the False Claims Act, 31 U.S.C. §3279, *et seq.,* as amended.

## II.    PARTIES

4

10. Relator, Captain Soma G. Priddle, is an airline pilot, employed by United Air Lines, a/k/a United Continental Holdings, Inc (United) as a flight officer since August 7, 1989.

11. She holds the following licenses and ratings, issued by the Federal Aviation Administration of the United States Department of Transportation:

12. She has flown at United in the following assignments during her employ: Second Officer DC-10; First Officer B767/757; First Officer DC-10; Captain B737; Captain A320; Captain B767/B757; Captain B777.

13. She is also accredited as a Safety Management System (SMS) auditor by the International Standard Business Aircraft Organization (IS-BAO), an International Civil Aviation Organization (ICAO) agency and is familiar with ICAO standards.

14. She is also a licensed attorney in the State of Wisconsin and is familiar with relevant state and federal law, including Federal Aviation Administration (FAA), National Transportation Safety Board (NTSB) and ICAO regulations.

15. Plaintiff resides in the State of Wisconsin.

16. Plaintiff's place of employment with United Air Lines is Chicago, Illinois.

17. Defendant, United Air Lines is a corporation which was incorporated in Illinois.

18. Defendant, United Continental Holdings is a corporation incorporated in Texas.

19. United Air Lines and Continental Air Lines, previously separate, competing Part 121 Scheduled air carriers, merged to create United Continental Holdings.

20. One rationale for the merger included 'efficiencies' of merging the 757/767 Continental and United fleets.

21. United Air Lines, a/k/a United Continental Holdings (United) is a Part 121 Scheduled Air Carrier, licensed by the Federal Aviation Administration (FAA) for the common carriage of passengers and freight.

22. United owns and operates aircraft repair stations, licensed by the FAA Part 145.

23. Defendant transacts business in the State of Illinois, including the fulfillment in part of U.S. government contracts at issue in this civil action.

24. Defendant contracts with the United States Government for the carriage of employees of U.S. federal government agencies, nationally and internationally through the GSA City Pair Program (CPP)

25. One of the leading international markets in the CPP was Washington D.C. to London, a route which United served with Boeing 767 and 777 aircraft.

26. Upon information and belief, as a requirement for participation in the CPP, United implicitly or explicitly certified that they conducted flight operations in accordance with applicable U.S. Federal Aviation Regulations for operation of aircraft, including Part 121 standards; their individual carrier Operating Specifications, and ICAO standards for international operations; and maintenance of aircraft in accordance with Part 145 Certificated Maintenance Repair Station requirements, and Part 121 standards.

27. United also contracted with the U.S. government for the carriage of military personnel and cargo.

6

28. A significant and material element and cause of the contract between United and the federal government is United's claim that they adhere to Federal Aviation Regulations.

29. Defendant has

   a. submitted or caused to be submitted claims to the Federal Government for payment for the provision of air transportation conducted in accordance with Federal Aviation Regulations; their own Operating Specifications (which have the binding and mandatory effect of Federal Aviation Regulation when approved by the individual Part 121 Air Carrier's Principal Operations Inspector (POI) of the FAA), and Safety Management System (SMS) protocols;

   b. Continues to submit or cause to be submitted claims to the Federal Government for payment for the provision of air transportation conducted in accordance with Federal Aviation Regulations; their own Operating Specifications, and SMS protocols;

   All of the which constitute false claims under the False Claims Act.

## III.  Jurisdiction and Venue

30. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, and 31 U.S.C. §3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730.

31. There have been no public disclosures of the allegations or transactions contained herein that bar jurisdiction under 31 U.S.C. §3730(e).

32. This court has personal jurisdiction over the defendants pursuant to 31 U.S.C. §3732(a) because that section authorizes nationwide service of process and because all the defendants have at least minimum contacts with the United States, and can be found in reside, or transact or have transacted business in the Northern District of Illinois.

33. Venue exists in the United States District Court for the Northern District of Illinois pursuant to 31 U.S.C. §3730(b)(1) because all of the defendants have at least minimum contacts with the United States, and all the defendants can be found in, reside, or transact business in the Northern District of Illinois.

### IV.    Applicable Law

**A. Federal Aviation Regulations**

34. Federal Aviation Regulations are regulations promulgated by the FAA for the regulation of safe and orderly flight, pursuant to their statutory authority.

35. Congress has granted the Federal Aviation Administration exclusive authority to regulate the safety of air commerce under 49 U.S.C. §106.

36. Part 121 Scheduled Air Carriers hold themselves out to the public as common carriers, complying with Federal Aviation Regulations and applicable safety standards.[1]

---

[1] See: Contract of Carriage

37. Contracts for the carriage of U.S. Government personnel are covered by and incorporate the Federal Aviation Regulations and NTSB regulations.

**B. National Transportation Safety Board Regulations**

38. The National Transportation Safety Board (NTSB) is an independent Federal agency charged by Congress with investigating every civil aviation accident and incident and issuing safety recommendations aimed at preventing future aviation accidents and incidents, pursuant to 49 U.S.C. §1101. *Et seq.*

39. All aircraft operators are required to comply with NTSB regulations, including reporting of accidents and incidents per 49 C.F.R. 830.2

40. In order to facilitate peaceful civil international aviation, by customary international law, Scheduled Air Carriers and international aircraft operators follow ICAO Recommended Safe Practices and adhere to the laws of the countries in which they operate.

41. United states that it follows the laws of the country in which it is operating, in addition to following U.S. law.

42. Canadian Flight Safety Board requirements differ from the U.S. NTSB accident reporting requirements in that Canadian law requires that pilots, crew members, and aircraft operators to report serious aviation incidents to the Transportation Safety Board, including major structural problems with the aircraft.

**C. False Claims Act**

43. False Claim Act liability attaches to any person who knowingly presents or causes a false or fraudulent claim to be presented for payment, or to a false record or statement made to get a false or fraudulent claim paid by the government. 31 U.S.C. §3729(a)(1) & (2).

44. Under the False Claims Act, "knowing" and "knowingly" mean that a person, with respect to information:

   (a) Has knowledge of the information;

   (b) Acts in deliberate ignorance of the truth or falsity of the information; or

   (c) Acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required. 31 U.S.C. §3729(b)

45. The False Claims Act is violated not only by a person who makes a false statement or a false record to get the government to pay a claim, but also by one who engages in a course of conduct that causes the government to pay a false or fraudulent claim for money.

## V.  Allegations

46. United knew or should have known that airplanes were dispatched in an unsafe manner, contrary to FARs.

47. United violated FARs, SMS protocols, and their own Operating Specifications by not reporting and maintaining airplanes according to their own stated maintenance procedures.

48. United intentionally falsified aircraft maintenance records by not reporting the full extent of maintenance irregularities and insufficiencies found by pilots and mechanics.

49. United created a culture of intimidation and fear, in direct violation of SMS standards which direct a culture of safety and regulatory compliance.

50. United publicly stated in its Corporate Policies, SEC filings, Contract of Carriage, Route authorization applications, and, upon information and belief government contracts, that it adhered to SMS protocols, including a just culture and protection of whistleblowers.

51. In actual operations, United maintained a culture of intimidation, hostility and harassment targeting whistleblowers and individuals who expressed concerns about safety.

52. SMS protocols requiring just culture and protection of whistleblowers, encouragement of safety reporting, outline specific actions required of corporation managers and Chief Executive Officers.

53. United falsely claimed to be following these SMS protocols.

54. United's managers had a direct financial incentive to cut costs, which included taking short cuts on safe operations such as cutting fuel reserves, violating maintenance rules, preventing medical diversions, etc.

55. United had a secret tracking system, and kept track of pilots who did not assist corporate managers in meeting their bonuses.

56. United penalized pilots who raised safety concerns and advocated for safety in ways that interfered with managers making their bonuses.

57. Although United claimed that safety was a top priority, their actions repeatedly demonstrated that meeting manager's bonuses and profits were a top priority.

58. Widespread data exists showing relationship between managers cost cutting programs and safety deterioration, however managers ignored the data.

59. United had a pattern and practice of dispatching airplanes with many maintenance items deferred.

60. Often a deferred item, covered by a Minimum Equipment List (MEL), had specific limitations for operating the airplane with the item deferred.

61. Employees, including Captains, are required to ensure that MEL items are complied with in order to meet the requirements of legal dispatch of the airplane.

62. Some MELs involving the fueling system, required one person to be in the cockpit watching the fuel gauges, while another person fueled the airplane from under the wing at the fuel port – and that these two persons be in communication contact with each other.

63. Procedures for complying with this MEL were in the United Air Lines Fueling Manual, and the MEL portion visible to the pilots, included on the Dispatch Release Message, so stated the requirement for two persons.

64. When pilots noticed that the airplane was fueled with only one person, often with passengers on board, in violation of FARs regarding fueling with passengers

boarded, and the specific MEL governing that operation, and questioned this deviation from procedure, they were firmly told to mind their own business.

65. When pilots asked the fueling supervisors about this deviation from the UAL fueling manual, they were told that there was not enough manpower, and to comply with the required procedures in the manual would result in a delay.

66. Having a delay code to fueling would hurt a fuel managers bonus and subject him to penalties including demotion and possible loss of employment.

67. When pilots wrote up repeated instances of this improper fueling and misuse of the deferral procedures, the pilots were subjected to harassment and discipline by management.

68. SMS procedures require that when a problem such as the misfueling is identified, that it is investigated and resolved with appropriate resources.

69. Instead of following correct SMS procedures, as United claimed to their regulators, the government, and their passengers, United whitewashed SMS reports by 'downcoding' them to not serious, and not investigating safety hazards.

### Count I: False or Fraudulent Claims

(31 .S.C. §3729(a)(1)(A))

70. United knowingly presented, or caused to be presented to an officer or employee of the U.S. government, false or fraudulent claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. §3729(a)(1)(A)), specifically claims for

13

payment for contracts to carry U.S. civilian employees of U.S. Government agencies; contracts to carry U.S. Dept. of Defense servicemembers and civilian employees; contracts to carry U.S. mail; contracts to carry freight and cargo for U.S. government agencies; contracts to provide Civil Reserve Air Fleet (CRAF) aircraft.

## **Count II: False Statements**
(31 U.S.C. § 3729(a)(1)(B))
(previously 31 U.S.C. 3729(a)(2) (1986))

71. United knowingly made, used, or caused to be made or used a false record or statement material to a false or fraudulent claim, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), including false statements concerning maintenance and airworthiness standards of aircraft.

14

72. Because of United's acts, the United States sustained damages in an amount to be determined at trial, and therefore is entitled to treble damages under the False Claims Act, plus civil penalties of not less than $5,500 and up to $11,000 for each violation.

## Count III: Unjust Enrichment

73. By virtue of submitting claims to the United States for the use of unairworthy and improperly maintained aircraft, United obtained inflated payments from the United States. Thus, United was unjustly enriched at the expense of the United States, in such amounts, as determined at trial.

## Count IV: Payment By Mistake

74. United submitted claims for payment for the use of aircraft and provision of aviation transportation services of cargo and personnel when the level of safety was not accurately disclosed, and if the actual level of safety was known, the procurement agent for the United States would not have agreed to the provision of services, or payment of the bill.

## Count V: Conversion

75. By virtue of the acts described, and specifically by submitting claims and obtaining payment for aviation transportation services of cargo and personnel when the level of safety was not accurately disclosed, United has appropriated the United States' property to its own use and benefit, and has exercised dominion of such property in defiance of the United States' rights.

76. United is, therefore, liable to the United States for actual damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America, by and through *qui tam* relator Soma G. Priddle (Relator) demands and prays that judgment be entered in its favor as follows:

I.      On the First and Second Counts under the False Claims Act, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with all such further relief as may be just and proper.

II.     On the Third Count for unjust enrichment, for the damages sustained and/or amounts by which United was unjustly enriched or which United retained obtained monies to which it was not entitled, plus interest, costs, and expenses.

III.    On the Fourth Count for payment by mistake, for the amounts by which United obtained to which it was not entitled, plus interest, costs, and expenses.

IV.     On the Fifth Count for conversion, for the damages sustained by the United States in an amount to be determined at trial, plus interest, costs and expenses.

V.      That Relator be awarded the maximum amount allowed pursuant to §

16

3730(d) of the False Claims Act.

VI.     That Relator be awarded all costs of this action, including attorney's fees

and expenses; and

VII.    That Relator recover such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator

hereby demands a trial by jury.

Dated: August 20, 2019

Respectfully submitted,

Soma G. Priddle, Esq.
17719 Lariat Avenue
Norwalk, WI 54648
Wisc. Atty No. 1097831
608-823-7214
630-747-8962
somapriddle@yahoo.com